**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 2, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WILLIE EARL FLOWERS,

Defendant-Appellant.

No. 05-5149
(N.D. Oklahoma)
(NO. 04-CR-212-TCK)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.[**]

Willie Earl Flowers was convicted after a jury trial of possession of a firearm after a former felony conviction, a violation of 18 U.S.C. § 922(g)(1). The district court found that Mr. Flowers had been convicted of three prior felonies, applied the Armed Career Criminal Act (ACCA), 18

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3

[**]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See FED. R. APP. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

U.S.C. § 924(e), and sentenced him to 264 months' incarceration, followed by five years' supervised release.

On appeal, Mr. Flowers argues that (1) the district court erred in denying his motion to suppress evidence found in his car during his October 15, 2004 detention; (2) the court erred in concluding that his 1991 Oklahoma conviction for escape from a penal institution constituted a violent felony under the ACCA; and (3) the court violated his Sixth Amendment rights by failing to require the government to prove to a jury beyond a reasonable doubt that he had previously been convicted of violent felonies.

We are not persuaded by Mr. Flowers's arguments and therefore affirm his conviction and sentence.

## I. BACKGROUND

On October 15, 2004, Tulsa, Oklahoma police officers received a report of a domestic disturbance at the home of Liza Harring, Mr. Flowers's girlfriend. When police officers arrived at Ms. Harring's door, she told them that Mr. Flowers had come to her house with a handgun and had pointed it at her.

Shortly after the officers arrived, Mr. Flowers came to the door. The officers instructed him to show his hands, turn around backwards, and walk

2

toward them slowly.  Mr. Flowers complied, and the officers placed him in handcuffs and patted him down.  After that inspection revealed no weapons, the officers put Mr. Flowers in a patrol car.  They placed the contents of his pockets, including his car keys, on the hood of a patrol car.  Officer Kevin Dorsey asked for Mr. Flowers's identification while other officers continued to talk to Ms. Harring.

Ms. Harring told the officers that the gun Mr. Flowers had pointed at her might be in her backyard, but, after the officers were unable to find it there, she said that it might be in Mr. Flowers's car.  Sergeant Robert Rohloff proceeded to read Mr. Flowers his Miranda rights and asked what had happened.  Mr. Flowers denied that he had brought a gun to Ms. Harring's house or that any guns were in his car.  Sergeant Rohloff asked him if he would have any objection to the officers searching the car, and Mr. Flowers stated that he would not.

The officers then discovered that Mr. Flowers' car was locked and asked him for the keys.  Mr. Flowers told them he did not know where the keys were, but Officer Dorsey then remembered that keys had been taken from Mr. Flowers's pocket and placed on the patrol car.  Officer Rohloff recovered the keys, opened the trunk, and discovered a briefcase containing two handguns.

After a grand jury indicted him for possession of a firearm after a

3

former felony conviction, in violation of 18 U.S.C. § 922(g)(1), Mr. Flowers filed a motion to suppress, arguing that the search of the trunk was the fruit of an unlawful detention and arrest.

The district court conducted a hearing and then denied the motion. The court reasoned that the officers had reasonable suspicion to detain Mr. Flowers when they first arrived at Ms. Harring's house and that they had probable cause to arrest him once they learned that he had pointed a gun at her. Moreover, the court said, Mr. Flowers had consented to the search of his car.

The jury convicted Mr. Flowers of the § 922(g)(1) firearm charge. The presentence report concluded that Mr. Flowers was an armed career criminal because he had three prior convictions for crimes of violence: first-degree robbery in 1967, second-degree burglary in 1989, and escape from a penal institution in 1991. Mr. Flowers objected on the grounds that he had a Sixth Amendment right to a jury trial on the issue of whether he had been convicted of these offenses. However, he did not object to the presentence report's characterization of the offenses as crimes of violence.

The district court overruled the objection and sentenced Mr. Flowers to 264 months' incarceration, followed by five years' supervised release.

## II. DISCUSSION

4

Mr. Flowers does not dispute the district court's factual findings regarding his motion to suppress, and we therefore examine de novo the question of whether the officers violated his rights under the Fourth Amendment. United States v. Williams, 271 F.3d 1262, 1266 (10th Cir. 2001). With regard to the characterization of his prior escape conviction, we note that Mr. Flowers did not raise that issue in the district court proceedings, and so our review is for plain error. United States v. Visinaiz, 428 F.3d 1300, 1308 (10th Cir. 2005). We examine de novo the question of whether the Sixth Amendment requires the government to submit to a jury the fact of Mr. Flowers's prior convictions.

## A. Motion to Suppress

Mr. Flowers concedes that "[t]he officers were initially justified in ordering [him] at gunpoint to walk backwards to them, and in handcuffing [him]" because "[the officers] were investigating a report that a man had a gun, and the caller had verified to police that [Mr. Flowers] previously had a gun." Aplt's Br. at 10. However, Mr. Flowers argues that the detention became unreasonable after the officers frisked him and found no weapons. At that point, he asserts, he no longer presented a danger, and the continued use of handcuffs was unreasonable under the Fourth Amendment. The search of his car, he concludes, was the fruit of that unlawful detention.

5

"The allowable scope of an investigative detention cannot be determined by reference to a bright-line rule." United States v. Neff, 300 F.3d 1217, 1220 (10th Cir. 2002). "[C]ommon sense and ordinary human experience must govern over rigid criteria." Id. (internal quotation marks omitted). Accordingly, even though the use of handcuffs is not justified in every investigative detention, "a Terry stop does not become unreasonable just because police officers use handcuffs on a suspect." Id. The use of handcuffs during an investigative detention is reasonable if it is "reasonably necessary to protect [the officers'] personal safety and to maintain the status quo during the course of [the detention]." Id. at 1220-21(internal quotation marks omitted).

Applying this standard, we conclude that the officers' continued use of handcuffs after they patted down Mr. Flowers did not violate the Fourth Amendment. Even though the officers found no weapons in Mr. Flowers's pockets, Ms. Harring's report that Mr. Flowers had been armed indicated that he might still pose a threat to their safety. See id. (concluding that officers did not act unreasonably by continuing to hold suspects in handcuffs while they searched a car for weapons). Accordingly, the officers were authorized to keep Mr. Flowers in handcuffs while they continued to search for weapons.

Moreover, as the district court noted, once the officers received

6

further information from Ms. Harring as to Mr. Flowers's threatening conduct, they had probable cause to arrest him. At that point, the continued application of handcuffs was justified on that ground as well. See United States v. Patane, 304 F.3d 1013, 1017 (10th Cir. 2002) ("Police are entitled to base an arrest on a citizen complaint . . . of a victim . . . without investigating the truthfulness of the complaint, unless . . . they have reason to believe it's fishy.") (citing Guzell v. Hiller, 223 F.3d 518, 519-20 (7th Cir. 2000) (internal quotation marks omitted), rev'd on other grounds, 542 U.S. 630 (2004); see generally 2 Wayne R. LaFave, *Search and Seizure* § 3.4(a), at 224-225 (4th ed. 2004) (noting that "[b]y far the prevailing view" is that corroboration is not essential in victim-witness cases, and arguing "that when an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case").

Thus, the search of Mr. Flowers's car was not the fruit of an unlawful detention or arrest. Additionally, as the district court noted, Mr. Flowers presented no evidence indicating that his consent to the search was the produce of police coercion. Accordingly, the district court correctly concluded that the search comported with the Fourth Amendment.

## B. Escape Conviction

We review for plain error Mr. Flowers's contention that his 1991 escape conviction did not constitute a violent felony under the ACCA. In order to prevail, Mr. Flowers must demonstrate: "(1) error, (2) that is plain, and (3) that the error affects substantial rights." Visinaiz, 428 F.3d at 1308. Even if Mr. Flowers makes this showing, we may exercise discretion to correct the error only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotation marks omitted).

Here, Mr. Flowers concedes that there is no error and that his counsel has "preserved the claim in order to pursue reversal of this precedent by en banc or Supreme Court review." Aplt's Br. at 13. As Mr. Flowers acknowledges, we have adopted a categorical approach to escape convictions, holding that these convictions constitute crimes of violence despite the underlying circumstances. See United States v. Moudy, 132 F.3d 618, 620 (10th Cir. 1998) (stating that "[e]very escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so" and that this characterization applies "to all escapes, whether or not violence was actually involved") (citing United States v. Gosling, 39 F.3d 1140, 1144 (10th Cir. 1994)).

8

## C. Sixth Amendment Claim

Finally, Mr. Flowers argues that the district court violated his Sixth Amendment rights by failing to submit the fact of his prior convictions to a jury. This argument is also foreclosed by circuit precedent. See United States v. Moore, 401 F.3d 1220, 1223, 1226 (10th Cir. 2005) (holding that "the fact of prior convictions under § 924(e) need not be charged in an indictment and proven to a jury" and also that "the government need not charge in an indictment and prove to a jury that a defendant's prior conviction constitutes a 'violent felony' under § 924(e)").

## III. CONCLUSION

Accordingly, we AFFIRM Mr. Flowers's conviction and sentence.

Entered for the Court

Robert H. Henry
Circuit Judge

9